United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Global Life Technologies Corp., <br> Plaintiff, <br><br> v. <br><br> Medline Industries, Inc., Defendant. | ) <br> ) <br> ) <br> ) Civil Action No. 20-21240-Civ-Scola <br> ) <br> ) <br> ) |

### Order Adopting in Part Magistrate Judge's Report and Recommendation

This cause comes before the Court on the Plaintiff's renewed motion to enforce the parties' settlement agreement, filed under seal. (ECF No. 83.) The Defendant responded opposing the motion (ECF Nos. 91, 95), and the Plaintiff replied. (ECF Nos. 97, 99.) The motion was referred to United States Magistrate Judge Edwin G. Torres (ECF No. 89). After a two-day evidentiary hearing (*see* ECF Nos. 112, 113), Judge Torres issued a report, finding that the Court had ancillary jurisdiction to enforce the settlement agreement and recommending the Court deny Plaintiff's request for contract damages under the settlement agreement, award the Plaintiff restitution in the form of disgorgement of Defendant's ill-gotten gains, and deny the Plaintiff's request for sanctions. Both parties filed objections to Judge Torres's report and recommendations. (ECF Nos. 121, 122.)

After reviewing the filings, the applicable law, and the record, the Court **grants in part** the Plaintiff's motion (**ECF No. 83**), and the Court **adopts in part** and **declines to adopt in part** the report and recommendations. (**ECF No. 116**.) Specifically, the Court **adopts** Judge Torres's recommendation that its ancillary jurisdiction warrants **denial** of Plaintiff's request for contract damages under the settlement agreement. (**ECF No. 116**; **ECF No. 83**.) The Court **adopts** Judge Torres's recommendation and **grants** Plaintiff's request for restitution the form of disgorgement of all Defendant's sales of the 1.0 Nasal Swabs in violation of the settlement agreement. (**ECF No. 116**; **ECF No. 83**.) However, the Court **declines to adopt** Judge Torres's recommendation that sanctions are not warranted in this case, and **grants** Plaintiff's request for attorneys' fees and costs in litigating the enforcement actions as sanctions. (**ECF No. 116**; **ECF No. 83**.)

1. **Background**

The Plaintiff Global Life Technologies Corp. ("Global Life") sued the Defendant Medline Industries, Inc. ("Medline") for patent infringement. (ECF

No. 1.) Global Life alleged Medline created and sold an infringing product: Antiseptic Nasal Swabs Ethyl Alcohol 62%. (*Id.* ¶¶ 24-37.) The parties entered into a settlement agreement. (Ex. B, ECF No. 40.) Global Life agreed to dismiss the action in exchange for Medline's assurances that it would stop selling the prohibited nasal swabs (hereinafter the "1.0 Nasal Swabs.") (*Id.*) Medline agreed to stop manufacturing, importing, selling, using, or distributing the 1.0 Nasal Swabs by December 31, 2021. (*Id.*) The Court retained jurisdiction to enforce the settlement agreement. (ECF No. 27.)

However, in early 2022, Global Life suspected that Medline was violating the agreement. (ECF No. 83.) In fact, Global Life staff purchased the prohibited swabs as proof of Medline's breach, and Medline's own website listed the 1.0 Nasal Swabs for sale as of January 25, 2022. (Ex. C, ECF No. 40.) On February 1, 2022, Global Life put Medline on notice about the prohibited sales and requested an accounting of the swabs sold. (Ex. F, ECF No. 40.) Medline responded with a lie: that it was in compliance with the agreement. (Ex. G, ECF No. 40) ("Medline is no longer selling the originally accused Medline Nasal Swabs and is in compliance with the settlement agreement. Your contrary representations are mistaken.")

Again, on February 9, 2022, Global Life demanded Medline detail its compliance with the agreement. (Ex. H, ECF No. 40) ("We encourage Medline to elaborate as to why it believes it is in compliance, as we have provided some evidence that your client continues to offer, advertise, and sell the Medline Nasal Swabs despite your representation.") And again, Medline lied, telling Global Life that it no longer sold the swabs. (Ex. I, ECF No. 40) ("Medline's current nasal swab products do not contain glyceryl laurate.")

In March 2022, Global Life initiated enforcement proceedings and moved to reopen the case. (ECF No. 33.) Medline admits that prior to the enforcement proceedings—even after the two letters from Global Life—it had not placed a distribution hold on the 1.0 Nasal Swabs. However, upon the commencement of the enforcement action and upon receiving proof of the January sale to Global Life agents, Medline finally sent an "urgent email to all distribution centers…placing all swabs on hold—1.0 and 2.0 inventory—until the matter could be sorted out." (ECF No. 116) (quoting ECF No. 111.)

In opposing Global Life's efforts to reopen the case, Medline again made several misrepresentations to the Court, including that it had "none of the old swabs in inventory available for shipment. None." (ECF No. 56.) And on March 12, 17, and 22, Medline incorrectly certified under oath that it was no longer making, selling, or distributing the prohibited swabs. (Ex. 1-4, ECF No. 56.) In reality, Medline had sold more than $207,000 worth of 1.0 Nasal Swabs prior

to March 10, 2022, and shipped $7,965,95 worth of sales after March 10, 2022—a fact Medline revealed after months of litigation. (ECF No. 77.)

Global Life renewed its motion to enforce the settlement agreement, asking the Court to award it "benefit of the bargain" damages, consequential damages, nominal damages, lost revenue, and lost customers due to Medline's breach of the settlement agreement. (ECF No. 83.) Should the Court find the foregoing remedies unavailable in this enforcement proceeding, Global Life asked the Court, "at a minimum", to award it restitution: disgorgement of Medline's profits from its unlawful sales. (*Id.* at 15-16.) Global Life also argues that sanctions are warranted due to Medline's repeated misrepresentations.

Judge Torres issued a report, recommending the Court deny Global Life's request for "benefit of the bargain" damages, consequential damages, nominal damages, damages for lost revenue, and damages for lost customers. (ECF No. 116 at 15-18.) Judge Torres concluded that such relief would go beyond the Court's ancillary jurisdiction to enforce the terms of the settlement agreement. (*Id.*) However, Judge Torres determined that the Court is "fully vested with the authority to order disgorgement of all profits incurred after December 31, 2021" and recommended that "*All* sales that were made in violation of the consent decree's provisions must be disgorged." (*Id.* at 24.) With respect to sanctions, Judge Torres concluded that the Medline had not acted in bad faith, and therefore Global Life's request for fees and costs, as a sanction under the Court's inherent powers or 28 U.S.C. § 1927, should be denied. (*Id.* at 24-29.) In doing so, Judge Torres found the testimony of Alana Cecola—Medline's Product Manager—to be credible. (*Id.* at 9.) According to Cecola, the misrepresentations were not intentional, but resulted from her assumption that the 1.0 Naval Swab inventory would have run out by the end of 2021. (*See id.*)

Neither party objected to Judge Torres's conclusion that, pursuant to the Court's ancillary jurisdiction to enforce the settlement agreement, it does not have jurisdiction to impose "benefit of the bargain" damages, consequential damages, nominal damages, damages for lost revenue, or damages for lost customers. Similarly, neither party disagrees with Global Life's entitlement to, or the Court's authority to award, disgorgement. Nor does Medline object to the scope of the disgorgement recommended by Judge Torres. (ECF No. 122) ("Medline is not challenging Judge Torres's final recommendation as to disgorgement of all 1.0 profits made in breach of the settlement agreement.") Rather, Medline objects to "some of the comments that Judge Torres made in the Report and Recommendation." (*Id.* at 1.) Specifically, Medline objections to the contention that its position that Global Life failed to mitigate damages was "specous" and "indefensible." (*Id.* at 2.)

Broadly, Global Life objects to Judge Torres's conclusion that sanctions are not warranted against Medline because Medline did not act in bad faith. (ECF No. 121.) Specifically, Global Life objects to the conclusion that Medline's actions were "simply negligent" or "merely reckless", to the conclusion that Cecola was credible, to the report's "overlook[ing]" Medline's material misrepresentation in open court, and to the report's "overlooking" key legal authorities or citing "inapplicable" cases. (*Id.*)

## 2. Legal Standard

In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (quoting *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir.1989)) (cleaned up). The objections must also present "supporting legal authority." L. R. 4(b). Once a district court receives "objections meeting the specificity requirement set out above," it must "make a de novo determination of those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge." *Macort*, 208 F. App'x at 783-84 (quoting *Heath*, 863 F.2d at 822) (cleaned up). To the extent a party fails to object to parts of the magistrate judge's report, those portions may be reviewed for clear error. *Macort*, 208 F. App'x at 784.

## 3. Analysis

After a review of the filings, the case law, and the record, the Court **adopts** Judge Torres's recommendation that Global Life's request for contract damages (benefit of the bargain damages, nominal damages, consequential damages, lost revenue, and lost customers) be denied as beyond the scope of the Court's ancillary jurisdiction to enforce the terms of the settlement agreement. The Court also **adopts** Judge Torres's recommendation that Court has authority to award restitution to Global Life, and that Medline must disgorge itself of all profits generated by all sales of the 1.0 Nasal Swabs that took place after December 31, 2021—amounting to approximately $215,000.

The Court, however, **declines to adopt** Judge Torres's recommendation that sanctions are not warranted because Medline did not act in bad faith. Global Life argues it is entitled to an award of attorneys' fees and costs pursuant to the Court's inherent authority. (ECF No. 110 at 3.) "The key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d

1212, 1214 (11th Cir. 1998). Bad faith arises "where an attorney knowingly *or recklessly* pursues a frivolous claim." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1241 (11th Cir. 2007) (emphasis in original). Recklessness warrants sanctions if the attorney "does not act knowingly and malevolently." *Id.* Mere negligence will not suffice. *Id.* at 1241-42. However, sanctions are proper where an attorney "*knowingly* or *recklessly* pursues a frivolous claim or needlessly obstructs the litigation of a non-frivolous claims." *Id.* at 1242 (emphasis in original). Then, the Court may order the attorney to pay costs, expenses, and attorneys' fees reasonably incurred because of the attorney misconduct. *Id.* If "particularly egregious", pursuit of a claim without reasonable inquiry into underlying facts can be the basis for a finding of bad faith. *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998).

Further, knowledge may be imputed to a party under the doctrine of willful blindness or deliberate ignorance. *Williams v. Obstfeld*, 314 F.3d 1270, 1278 (11th Cir. 2002). Under the doctrine, knowledge may be imputed "to a party who knows of a high probability of illegal conduct and purposely contrives to avoid learning of it." *Id.* (cleaned up).

The record goes beyond a showing of mere negligence. At best, the evidence demonstrates recklessness and willful blindness by Medline; at worst, knowing misrepresentations. In its initial letter dated February 1, 2022, counsel for Global Life informed Medline about the suspected breach of the settlement agreement, providing a link to the Medline website offering "Medline Nasal Swabs for sale in violation of the Settlement Agreement." (Ex. F, ECF No. 40.) In that letter, Global Life asked Medline to confirm that it will cease and desist all activities related to the prohibited swabs, identify all sales efforts relating to Medline swabs after December 31, 2021, and provide an accounting of all swabs sold in violation of the agreement. (*Id.*) Medline did none of the above. Instead, counsel for Medline responded with "an immediate 'pound sand'"[1]: a three-sentence letter, stating incorrectly that it no longer sold the product. (Ex. G, ECF No. 40.) Again, on February 9, 2022, Medline was put on notice about the violation, and Global Life asked Medline to detail its compliance with the settlement agreement. (Ex. H, ECF No. 40.) And again, Medline said incorrectly that it "no longer sells the originally accused product." (Ex. I, ECF No. 40.)

Neither letter prompted an examination into Medline's own sales records. Nor did the commencement of the enforcement action by the Plaintiff. Instead, Medline continued by making misrepresentations to the Court—as the R&R acknowledged. (ECF No. 116 at 24) ("the panoply of misrepresentations"); (*Id.* at

---

[1] (ECF No. 116 at 24.)

27) ("the multiple times that untrue information was provided to the Court, under oath"); (*Id.* at 5) ("Medline wrongly certified under oath"); (*Id.*) ("That turned out to be wrong, again."). As the R&R recognized, "Medline ultimately produced a sales report that documented sales of the 1.0 Nasal Swab through March 9, 2022, yet Medline filed its first sworn declaration the very next day (on March 10, 2022) claiming that it was not selling any 1.0 Nasal Swabs." (ECF No. 116 at 25.)

However, Judge Torres concluded that Medline did not have subjective bad faith because Cecola—whom he found to be credible—testified that the misrepresentations were the result of her "assumptions that she and others had made that the 1.0 Nasal Swabs would have run their course in inventory before the end of 2021." (*Id.* at 9.) The R&R acknowledges that "had the Court found Medline's witness to be incredible, the case for subjective bad faith would have been clear, convincing and self-evident." (*Id.* at 27.)

"When a district court refers a matter to a magistrate judge to conduct an evidentiary hearing and make findings of fact, the district court is required to make a de novo determination" as to the portions of the magistrate judge's report that the parties have objected to. *Amlong & Amlong*, 500 F.3d at 1245 (discussing 28 U.S.C. § 636(b)(1)); *see also United States v. Raddatz*, 447 U.S. 667, 674 (1980) (explaining that 28 U.S.C. § 636(b) "calls for a de novo determination, not a de novo hearing"). "In making its determination, the district court is generally free to employ the magistrate judge's findings to the extent that it sees fit—the court may adopt the magistrate judge's findings in whole, in part, or not at all." *Amlong & Amlong*, 500 F.3d at 1245. But "a district court may not reject a magistrate judge's factual and credibility findings" unless it holds a new hearing to observe the demeanor of the witnesses. *Id.*; *see also Raddatz*, 447 U.S. at 671–72 (accepting a magistrate judge's unadorned conclusion that he found one witness "more credible" than another). The rationale for this rule is simple: "Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002).

The Eleventh Circuit has stated, "this general rule is subject to a small exception in the 'rare case' where 'there . . . [is] found in the transcript an articulable basis for rejecting the magistrate's original resolution of credibility and that basis . . .[is] articulated by the district judge.'" *United States v. Cofield*, 272 F.3d 1303, 1306 (11th Cir. 2001) (citing *United States v. Marshall*, 609 F.2d 152, 155 (5th Cir. 1980)).

    Although the Court ordinarily defers to the credibility determination of the Magistrate Judge, this is one of the rare cases outlined by the Eleventh Circuit where the record provides an articulable basis to reject the credibility determination. *See id.* As a threshold matter, Cecola has already lied under oath. In her April 2022 deposition, Cecola admitted that by March 12, 2022, Medline was aware it had been selling the prohibited nasal swabs. (Ex. A, ECF No. 110.) Nevertheless, Cecola's March 12, 2022, declaration, made under the penalty of perjury, stated "I further confirm that Medline no longer sells nor distributes the version of the 62% alcohol nasal swab made with glyceryl laurate." (Ex. 2, ECF No. 55.) Cecola's explanation to Judge Torres about the lie reveals further lack of candor with the Court:

> THE COURT: So when you said in your declaration: I further confirm that Medline no longer sells or distributes the 1.0, you were saying that because at that point you had put a hold on any further sales; is that what you're saying?
> A. Yes, Your Honor.

(ECF No. 111 at 44.) Such testimony evinces an effort to conceal the *prior* violations that Medline has admitted it knew about at the time the declaration was filed. When asked during the evidentiary hearing if Medline ever "came clean" and told the Court it made sales in violation of this settlement agreement, Cecola replied "No. Because we did not have confirmation that those sales occurred." (*Id.* at 46.) However, in her April 2022 deposition, she admitted that by March 12, 2022, Medline *was* aware it had been selling the 1.0 Nasal Swabs. (ECF No. 121) (citing Ex. A, ECF No. 110.)

> Q: Now, by this point in time March 12th, Medline was aware that it had sold the old Medline Nasal Swabs in violation of the settlement agreement?
> MR. HOOVER: Objection. Assumes facts not in evidence.
> BY MR. RUIZ:
> Q: Is that correct?
> A: Yes.

(Ex. A, ECF No. 110); (Ex. E at 90-91, ECF No. 83). Further, confirmation would have been readily available for Medline to obtain. When asked how long it took to retrieve Medline's sales history report of the 1.0 Nasal Swabs, Cecola said "[a] couple of seconds." (Ex. E at 44-46, ECF No. 83.) Nevertheless, before signing declarations, under the penalty of perjury, Cecola claims she never

checked the sales reports to "confirm" whether Medline had violated the agreement. (*Id.* at 40-41.)

> Q: So is it your testimony that when you signed this declaration you didn't look into whether or not Medline had made sales of the old Medline Nasal Swabs in violation of the agreement?
> …
> A: Correct.

(*Id.*) Cecola also admitted that at the time she signed the declarations, she knew about the 1.0 Nasal Swabs—the prohibited swabs—listed for sale on Medline's website. (*Id.*) Still, she claims she did not look into whether or not Medline had actually made any sales after December 31, 2021, before signing the declaration under oath. (*Id.*) So, despite being aware that prohibited sales occurred, and despite being aware that the prohibited items were listed on the website, Cecola signed a misleading declaration stating "Medline no longer sells nor distributes the version of the 62% alcohol nasal swab made with glyceryl laurate", and she explained that she never "came clean" to the Court about the aforementioned misrepresentation because "they did not have confirmation that those sales occurred"—confirmation that would have taken Medline "[a] couple of seconds" to obtain.

The record at large and the transcripts of the evidentiary hearing before Judge Torres illustrate that Cecola has changed her story, has lied under oath, and failed to come clean about her misleading representations to the Court. Therefore, there exists an articulable basis to reject the determination of her credibility and find bad faith on the part of the Defendant.

Independently, even if the Court were to find Cecola credible, the overall conduct of the Defendant and its attorneys shows, at best, a reckless disregard for the truth. As previously indicated, by March 12, 2022, Medline was aware (even assuming a lack of *confirmation*) that it had been selling the 1.0 Nasal Swabs. (Ex. A, ECF No. 110); (Ex. E at 90-91, ECF No. 83). However, even after March 12, 2022, Medline continued to dispute to the Court that it had violated the agreement. (ECF No. 55) ("Medline is not manufacturing, selling, or distributing any of the accused nasal swabs having glyceryl laurate and there is no reasonable expectation that Medline will resume manufacturing, selling, or distributing such swabs."). Such lies were perpetuated to Judge Torres at a hearing on March 23, 2022:

> "THE COURT:…Basically you're saying that this was a one-time, one-off kind of thing and that as a practical matter,

>the whole thing is moot because you are not selling any infringing product after December 31st. Is that basically the crux of your position?
>MS. LITTLE: Correct. It's moot. There's nothing – no ongoing wrongful conduct."

(ECF No. 60 at 36-37.) In actuality, the sales reports reveal that the sales were not a "one-time, one-off kind of thing", but near-daily occurrences. (Ex. A, ECF No. 121.) And Medline *was aware* of prohibited sales by the time Medline's attorneys made the above representations.

In its objections, Medline claims it "did not make any untrue statement or implication about its inventory of swabs to Judge Torres. There was a partial failure in Medline's internal quarantine process, to be sure, but Medline's assertions about the quarantine were accurate." (ECF No. 122 at 3.) Even when faced with evidence of the "panoply of misrepresentations" in this case (some made after March 12, 2022—when Medline knew of the breach), Medline still refuses to embrace full candor with the Court. Therefore, the Court finds Medline acted with both objective and subjective bad faith when making repeated misrepresentations to Global Life and to the Court.

In addition to a finding of bad faith, the Court finds that Medline's bad faith misrepresentations forced Plaintiff to unnecessarily pursue the present enforcement efforts that have lasted longer than two years. Global Life seeks attorneys' fees and costs pursuant to the Court's inherent authority. (ECF No. 110.) "[A]n assessment of attorney's fees is undoubtedly within a court's inherent power" to sanction. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45 (1991). The district court may fashion a sanction that is "a direct response to the harm that the bad faith conduct" caused. *Barnes v. Dalton*, 158 F.3d 1212, 1215 (11th Cir. 1998). Because Medline's misrepresentations caused this drawn-out enforcement action, the Court finds that Global Life is entitled to reasonable attorneys' fees and costs associated with its enforcement efforts.

**Done and ordered** in Miami, Florida, on July 26, 2024.

Robert N. Scola, Jr.
United States District Judge